**ORIGINAL**

# In the United States Court of Federal Claims
No. 14-1162C
(Filed: August 31, 2015)

**FILED**
AUG 3 1 2015
U.S. COURT OF
FEDERAL CLAIMS

* * * * * * * * * * * * * * * * * * * * * * * * * * * *
\*
**EDDIE WISE AND DOROTHY WISE,**       \*
\*
\*
Plaintiffs,       \*
\*
v.       \*
\*
**THE UNITED STATES,**       \*
\*
Defendant.       \*
\*
* * * * * * * * * * * * * * * * * * * * * * * * * * * *

---

## ORDER OF DISMISSAL

---

**WILLIAMS**, Judge.

In this action, Plaintiffs pro se seek compensation from the United States stemming from the Farm Service Agency's ("FSA") denial of their 2012 application for a farm operating loan under the United States Department of Agriculture-FSA Farm Loan Program. Plaintiffs previously filed an action in the United States District Court for the Eastern District of North Carolina challenging the denial of this same 2012 farm operating loan, asserting violations of both the Equal Credit Opportunity Act ("ECOA") and the Administrative Procedure Act ("APA"). The District Court dismissed this action for failure to state a claim upon which relief can be granted, and Plaintiffs appealed to the United States Court of Appeals for the Fourth Circuit. While that appeal was still pending, Plaintiffs filed the instant action.[1]

This matter comes before the Court on Defendant's motion to dismiss. At issue is whether 28 U.S.C. § 1500 bars this Court from hearing this action because the same claim was pending in the Fourth Circuit when Plaintiffs filed their suit here. Because both actions challenged FSA's denial of Plaintiffs' 2012 farm operating loan application, the cases involve

---

[1] In addition, Plaintiffs raised these same claims via a counterclaim in another action. Specifically, on December 1, 2014, Plaintiffs filed a counterclaim in a foreclosure suit brought by the United States in the United States District Court for the Eastern District of North Carolina, alleging the same ECOA and APA violations, along with fraud, civil rights violations under 42 U.S.C. §§ 1983, 1985, and 1986, and negligence, based on the same denial of a farm operating loan in 2012. As of the filing of this action on December 2, 2014, Plaintiffs' counterclaim in the foreclosure suit was pending.

the same operative facts, and § 1500 divests this Court of jurisdiction. As such, Defendant's motion to dismiss is granted.

## Background

Plaintiffs pro se are the operators of a hog and livestock farm in Nash County, North Carolina, and have previously received farm operating loans under the USDA-FSA Farm Loan Program. Compl. ¶ 1. In September 1997, the Farm Service Agency[2] ("FSA") Loan Manager assigned to Plaintiffs was relocated, and Plaintiffs were subsequently assigned a new Loan Manager. Compl. ¶ 1. In January 2011, this Loan Manager retired, and Plaintiffs were assigned their current Loan Manager. Id. at ¶¶ 4, 6. Plaintiffs allege that despite a request for assistance, their new Loan Manager did not provide any help in developing Plaintiffs' 2012 farm operating plan. Id. at ¶ 7. Plaintiffs were able to secure the assistance of their former, now retired, Loan Manager, and submitted the required documents to their Loan Officer in January 2012. Id. at ¶ 9.

The farm operating plan prepared for Plaintiffs on March 27, 2012, based on the information that they provided to their Loan Manager, projected "negative net operating inflows and negative net cash available from the projected livestock and poultry sales" from their farm. Based on this projection, Plaintiffs were informed by their Loan Manager that they did not qualify for any FSA Primary Loan Servicing programs. Id. at ¶¶ 10-11. Plaintiffs subsequently submitted a Farm Business Plan Worksheet using their own historical sales data rather than a national average to calculate the projected cash flow for 2012. Id. at ¶ 14. Plaintiffs' Loan Manager prepared a second farm operating plan in May 2012, this time showing "positive net operating inflows and positive net cash available for operations." Id. at ¶ 15. Plaintiffs were instructed to meet with their Loan Manager to finalize approval of this plan, however at this meeting, the Loan Manager notified Plaintiffs that she had decided not use this second plan. Id. at ¶¶ 16-17. Plaintiffs were then informed that because they "did not qualify for any FSA Primary Loan Servicing program, they would be required to make monthly debt payments of $3,100.00 to the USDA to avoid foreclosure . . . ." Id. at ¶ 17.

In June 2012, a third farm operating plan was prepared by the Loan Manager, further reducing the anticipated sales of livestock and repeating the projection of negative cash flow. Id. Because Plaintiffs' farm does not generate sufficient income to allow them to pay $3,100.00 per month, they have defaulted on the obligations due under their promissory note. Id. at ¶¶ 19-20. Plaintiffs allege that the farm operating plans of "similarly situated white Caucasian livestock farmers" were approved by their Loan Manager, and that the "rejection of [their] application to participate in [a] USDA-FSA Primary Loan Servicing program [was] based upon [their] race." Id. at ¶¶ 23, 26. Although Plaintiffs met multiple times with the FSA state director to "obtain

---

[2] The Farm Service Agency is part of the United States Department of Agriculture ("USDA"). See Lea v. United States, 120 Fed. Cl. 440, 442 (2015).

reversal of the USDA-FSA decision to deny them any participation in [a] USDA-FSA Primary Loan Servicing program for 2012," these meetings were not successful. Id. at 27.

Plaintiffs allege that the decisions of their Loan Manager were "willful and taken in known and reckless disregard[] of the plaintiff[s'] rights under the Equal Credit Opportunity Act," that as a "direct and proximate result of the discriminatory actions and omissions" of the USDA, Plaintiffs have "suffered actual damages and severe emotional distress," that they have been prohibited from filing a grievance with an administrative law judge, and that two foreclosure actions have been filed against them for which they "need[] to be compensated." Id. at ¶¶ 28-32. Plaintiffs seek damages of $5,000,000 and list the following as causes of action: "The Food Energy Conservation Act, 7 CFR 766.358, The Covenant of Fair Dealing, Implied in Fact, Breach of Contract (Loan Agreement), 15 USC 1122 For Each Employee Mentioned, The Doctrine of Equitable Tolling, Regulatory Taking of the 5th Amendment, Regulatory Taking of the 14th Amendment." Compl. 7.

## Discussion

### Subject-Matter Jurisdiction

Before the Court may proceed to the merits of any action, the plaintiff must first establish subject-matter jurisdiction. See Hardie v. United States, 367 F.3d 1288, 1290 (Fed. Cir. 2004). The Court assumes all factual allegations as true, and will construe the complaint in a manner most favorable to the Plaintiff. Pennington Seed Inc. v. Produce Exch. No. 299, 457 F.3d 1334, 1338 (Fed. Cir. 2006). Plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). Although pro se litigants are held to "less stringent standards than . . . lawyers," they still bear the burden of establishing the Court's jurisdiction. Naskar v. United States, 82 Fed. Cl. 319, 320 (2008) (internal citation and quotation marks omitted); see also Tindle v. United States, 56 Fed. Cl. 337, 341 (2003).

The United States is immune from suit, save by consent; this waiver of immunity "cannot be implied but must be unequivocally expressed." United States v. King, 395 U.S. 1, 4 (1969); see also United States v. Sherwood, 312 U.S. 584, 586 (1941). The waiver of immunity by the United States must be "strictly construed . . . in favor of the sovereign." Dep't of the Army v. Blue Fox, 525 U.S. 255, 261 (1999).

The Tucker Act, 28 U.S.C. § 1491(a)(1) (2012), provides that this Court

> shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

3

The Tucker Act does not create a substantive right for money damages against the United States, but rather is a jurisdictional statute. United States v. Testan, 424 U.S. 392, 398 (1976). A plaintiff must show that he or she is entitled to money damages from an additional source of substantive law. Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008). The substantive right to money damages must extend from the Constitutional provision, statute, or regulation giving rise to the claim. See United States v. Mitchell, 463 U.S. 206, 216-17 (1983) ("[T]he claimant must demonstrate that the source of substantive law he relies upon 'can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained.'" (quoting Testan, 424 U.S. at 400)).

### This Court Lacks Jurisdiction to Hear Plaintiffs' Claims Because These Same Claims Were Pending Before Another Court When This Suit Was Filed

Defendant moves to dismiss Plaintiffs' complaint for lack of subject-matter jurisdiction under 28 U.S.C. § 1500, because Plaintiffs' claims were pending before another court at the time their complaint was filed in this Court.

Under 28 U.S.C. § 1500, this Court "shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States . . . ." 28 U.S.C. § 1500 (2012). Section 1500 was enacted to "force plaintiffs to choose between pursuing their claims in the Court of Claims or in another court, and to protect the United States from having to defend two lawsuits over the same matter simultaneously." United States v. Cty. of Cook, Ill., 170 F.3d 1084, 1090 (Fed. Cir. 1999) ("Cook County") (alteration in original) (internal citations and quotation marks omitted); see also Johns-Manville Corp. v. United States, 855 F.2d 1556, 1562 (Fed. Cir. 1988) (per curiam) ("The purpose of section 1500 is to prohibit the filing and prosecution of the same claims against the United States in two courts at the same time."). Section 1500 "was enacted for the benefit of the government and was intended to force an election where both forums could grant the same relief, arising from the same operative facts." Johns-Manville Corp., 855 F.2d at 1564.

A two-part test is employed to determine whether or not jurisdiction is barred under §1500. See Brandt v. United States, 710 F3d 1369, 1374 (Fed. Cir. 2013) ("[A] court must make two inquiries: (1) whether there is an earlier-filed 'suit-in-process' pending in another court, and if so, (2) whether the claims asserted in the earlier-filed case are 'for or in respect to' the same claim(s) asserted in the later-filed Court of Federal Claims action."); see also Res. Invs., Inc. v. United States, 785 F.3d 660, 664-68 (Fed. Cir. 2015); Ministeria Roca Solida v. United States, 778 F.3d 1351, 1353-54 (Fed. Cir. 2015); Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163-64 (Fed. Cir. 2011). Suits are considered to be "for or in respect to" the same claim if "the other suit was based on substantially the same operative facts as the Court of Claims action . . . ." Keene Corp. v. United States, 508 U.S. 200, 212 (1993); see also Cent. Pines Land Co., L.L.C. v. United States, 697 F3d 1360, 1364 (Fed. Cir. 2012) ("To determine whether the § 1500 bar attached when plaintiffs filed their Claims Court action, we compare the operative facts

asserted at the time the two complaints were filed."); Heritage Minerals, Inc. v. United States, 71 Fed. Cl. 710, 715 (2006).

Plaintiffs filed suit in the United States District Court for the Eastern District of North Carolina, Case No. 4:13-CV-234, on November 5, 2013. Def.'s Mot. to Dismiss Ex. A. On November 13, 2014, upon the District Court's dismissal of Plaintiffs' District Court action for failure to perfect service and failure to state a claim upon which relief may be granted, Plaintiffs appealed to the United States Court of Appeals for the Fourth Circuit. Id. at Exs. C and D.[3] Plaintiffs filed their complaint in this Court on December 2, 2014, while their appeal to the Fourth Circuit was still pending.[4] "Where a party appeals the decision of a district court before filing [in this Court], the claim before the appellate court is pending for purposes of § 1500." Heritage Minerals, Inc., 71 Fed. Cl. at 715; see also Hornback v. United States, 36 Fed. Cl. 552, 555-57 (1996) (finding that § 1500 divested this Court of jurisdiction where the plaintiff's complaint was filed while his District Court action was on appeal to the United States Court of Appeals for the Ninth Circuit); Wilson v. United States, 32 Fed. Cl. 794, 795-96 (1995) ("Because plaintiffs had an appeal pending against the United States when they filed suit in the Court of Federal Claims, the issue devolves to whether the claim brought in this court constitutes the same claim as that on appeal before the United States Court of Appeals for the District of Columbia.").

Here, both the appeal in the Fourth Circuit and the instant complaint challenge the Government's denial of an FSA farm operating loan against the identical backdrop of Plaintiffs' previous history with the FSA and their 2012 loan application process. Both cite racial discrimination as the cause of the denial of Plaintiffs' loan application.

The statements of fact in Plaintiffs' District Court complaint, that resulted in the pending appeal, and the complaint filed in this Court are nearly identical, save for a few minor differences. There is a difference in paragraph numbering and an addition of two factual paragraphs in this Court's complaint relating to USDA's denial of Plaintiffs' request to bring a grievance before an administrative law judge and to the foreclosure action brought against the Plaintiffs on November 19, 2014. Compare Compl. ¶¶ 1-32 with Def.'s Mot. to Dismiss Ex. B; see also Def.'s Mot. to Dismiss 6 n.1; Cent. Pines, 697 F.3d at 1364-65 (holding that because "plaintiffs filed two nearly identical complaints," there was "substantial overlap of operative facts that implicates the § 1500 bar").

---

[3]   The Fourth Circuit affirmed the District Court's decision on February 3, 2015, two months after Plaintiffs filed the instant action. Def.'s Mot. to Dismiss Ex. D.

[4]   Additionally, on December 1, 2014, Plaintiffs filed another claim arising from the denial of the 2012 loan - - a counterclaim in a foreclosure proceeding filed against them in the United States District Court for the Eastern District of North Carolina on November 19, 2014. Def.'s Mot. to Dismiss 7. The counterclaim was still pending at the time of the filing of Defendant's motion to dismiss. Id.

This Court recognizes that while the facts pled are substantially identical, Plaintiffs in the District Court/Fourth Circuit action did not raise the legal theories of breach of contract and takings raised in this action. However, it is the underlying facts of the claim that are controlling in determining whether § 1500 applies, not the legal theory argued. Keene, 508 U.S. at 212 ("That the two actions [are] based on different legal theories [does] not matter."). "[C]laims are the same where they arise from the same operative facts even if the operative facts support different legal theories which cannot all be brought in one court." Johns-Manville Corp., 855 F.2d 1567 (emphasis added); see also Cook County, 170 F.3d at 1091; OSI, Inc. v. United States, 73 Fed. Cl. 39, 44 (2006). Nor does a difference in the relief available under different legal theories negate the applicability of § 1500. United States v. Tohono O'Odham Nation, _ U.S. _, 131 S.Ct. 1723, 1731 (2011) ("Two suits are for or in respect to the same claim, precluding jurisdiction in [this Court], if they are based on substantially the same operative facts, regardless of the relief sought in each suit.").

Because Plaintiffs had a claim pending in another court at the time of filing in this Court and because both that pending claim and the instant action arise from the same set of operative facts, Section 1500 divests this Court of jurisdiction over this action.

## Conclusion

Defendant's motion to dismiss is **GRANTED**.[5] Plaintiffs' motion for summary judgment is dismissed as moot. The Clerk is directed to dismiss this action.

MARY ELLEN COSTER WILLIAMS
Judge

---

[5] Dismissal pursuant to 28 U.S.C. § 1500 is for want of jurisdiction – "'a ground which would appear not to preclude a subsequent refiling here of a new . . . claim, assuming the limitations period has not run.'" Whyte v. United States, 59 Fed. Cl. 493, 496 (2004) (quoting Vaizburd v. United States, 46 Fed. Cl. 309, 311-12 (2000)); see also Do-Well Mach. Shop, Inc. v. United States, 870 F.2d 637, 640 (Fed. Cir. 1989) (holding that dismissal for lack of jurisdiction does not carry res judicata effect).